# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RONDELLTE FRAZIER, Individually, and §
on Behalf of All Others Similarly Situated, §
   Plaintiff, §
             v. §    CASE NO. 3:16-CV-2657-S
              §
DALLAS/FORT WORTH §
INTERNATIONAL AIRPORT BOARD, §
   Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Rondellte Frazier ("Frazier") brings this Fair Labor Standards Act ("FLSA") suit against Defendant Dallas/Fort Worth International Airport Board ("DFW") for unpaid overtime wages on behalf of himself and all other Civilian Security Officers jointly employed by DFW and at least one of the Contractors ("Plaintiffs").[1] Plaintiff Cynthia Brannon ("Brannon") opted in as a plaintiff on February 17, 2018. *See* ECF No. 99. DFW moves for partial summary judgment with respect to all claims asserted by Brannon, arguing that Brannon's claims fail as a matter of law because she received premium pay for work performed outside of her regular work hours at a fixed rate that was at least one and one-half times her regular rate. For the reasons that follow, the Court denies DFW's Motion.

## I. BACKGROUND

Per Special Order 3-3-18, this case was transferred from the docket of Chief Judge Barbara M.G. Lynn on March 8, 2018, to the docket of this Court.

---

[1] The Contractors are terminated Defendants Manhattan/Byrne/JRT/3i ("MBJ3"), Wells Global, LLC ("Wells Global"), EAS Contracting, LP ("EAS"), Haydon Building Corp. ("Haydon"), Phillips/May Corporation ("Phillips"), and Balfour Beatty Construction Corporation ("Balfour"). First Am. Compl. 1.

Plaintiffs are employed by DFW as Civilian Security Officers for the Dallas/Fort Worth International Airport (the "Airport"). First Am. Compl. ¶¶ 31, 33-34. DFW contracted with the Contractors to construct an updated airport terminal at the Airport. *Id.* ¶ 32. Plaintiffs were allegedly jointly employed by DFW and the Contractors to provide security services for the Airport and the construction site. *See id.* ¶¶ 1, 30, 35-36, 52, 59, 63. Plaintiffs explicitly deny that they were employed by each of the Contractors as "independent contractors." *Id.* ¶ 55.

While performing security services as employees of DFW, Plaintiffs are allegedly considered to be performing "on duty" security services. *Id.* ¶ 35. While performing security services for the Contractors, Plaintiffs are allegedly considered to be performing "off duty" security services. *Id.* Plaintiffs claim that the arrangement for Plaintiffs to work some hours for DFW and some hours for the Contractors is a sham and was developed by DFW and each of the Contractors to, among other things, avoid paying overtime wages. *Id.* ¶ 43.

Plaintiffs allegedly work 40 hours per week performing security services as employees of DFW, as well as an additional number of hours per week for one or more of the Contractors. *Id.* ¶ 63. Plaintiffs allege that when the hours they are assigned by DFW are combined with the hours they are assigned by the respective Contractors, Plaintiffs regularly work in excess of 40 hours a week, but they are not paid at an overtime rate for the combined hours. *Id.* ¶ 64. According to Plaintiffs, Plaintiffs are not paid time-and-one-half their regular rate of pay for the hours worked over 40 hours a week because DFW and the Contractors count the "on duty" work and the "off duty" work as separate jobs. *Id.* ¶ 65.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

2

56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III. ANALYSIS

During her employment with DFW, from February 6, 2017, through July 9, 2017, Brannon was paid on an hourly basis at $17.55 per hour. *See* Def.'s App. 002, 004-05. Brannon provided security services to MBJ3 on two occasions at a fixed pay rate of $30.00 per hour. *See id.* at 013, 016-18. During the workweek of February17, 2017, through February 19, 2017, Brannon worked 40 hours for DFW at her regular hourly rate, and also provided four hours of security services to MBJ3 on February 14, 2017, at a fixed rate of $30.00 per hour. *See id.* at 014, 016-18. During the workweek of June 26, 2017, through July 2, 2017, Brannon worked 32 hours for DFW and used eight hours of sick time. *See id.* at 002, 005, 007. Brannon also provided four hours of security services to MBJ3 on June 27, 2017, at a rate of $30.00 per hour. *See id.* at 014, 016-18.

DFW contends that Brannon's claims fail as a matter of law because she received premium pay for work performed outside of her regular work hours at a fixed rate that was at least one and a half times her regular rate. Def.'s Br. 5. DFW argues that this premium pay is excluded from Brannon's regular rate of pay when computing overtime compensation due under the FLSA, and that DFW is entitled to an offset of this premium pay toward any alleged overtime owed to Brannon. *Id.*

The FLSA requires employers to pay their employees for hours worked in excess of 40 hours a week at a rate no less than one and one-half times the employee's regular rate. *See* 29 U.S.C. § 207(a)(1). However, the FLSA also expressly authorizes certain "credits" towards overtime compensation. *See* 29 U.S.C. § 207(h)(2). An employer is entitled to credits "toward overtime compensation payable" to an employee for

> extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such

4

employee . . . or in excess of the employee's normal working hours or regular
working hours, as the case may be[.]

*Id.*; 29 U.S.C. § 207(e)(5). Moreover, these overtime premium payments are not included in the calculation of an employee's regular rate of payment. *See* 29 U.S.C. § 207(e).

The parties dispute the nature of the $30.00 per hour payments for "off duty" work. Plaintiffs contend that the payments are not overtime premiums under the FLSA, and thus, are includable in Brannon's regular rate of pay and should not be credited towards overtime owed to Brannon. *See* Pls.' Resp. 17. Plaintiffs argue that DFW has not produced any evidence that the $30.00 per hour payments for "off duty" work were made because such hours were in excess of eight in a day of 40 in a workweek. *Id.* at 24. Rather, Plaintiffs contend that the Civilian Security Officers were not required to work eight hours in a day or 40 hours in a week before they could work "off duty" for $30.00 per hour.

According to Plaintiffs, because Brannon was paid two different rates for her "off duty" work and her "on duty" work in the same workweek, her regular rate of pay for such workweek is the weighted average of the two rates of pay. *Id.* at 19. Plaintiffs argue that for the workweek of February 13, 2017, through February 19, 2017, Brannon worked 44 hours—40 hours for DFW at a rate of $17.55 per hour and four hours for MBJ3 at a rate of $30.00 per hour, for a total of $822.00. *Id.* at 20. Therefore, Plaintiffs claim that Brannon's regular rate of pay for such week was $18.68, and her overtime rate of pay at one and one-half the regular rate was $28.02. *Id.* Plaintiffs argue that Brannon is owed the difference of regular rate paid for those four hours and the overtime owed, for a total of $37.36. *Id.*

DFW, however, maintains that the payments qualify as overtime premiums because Plaintiffs previously conceded that the hours the Civilian Security Officers worked "off duty" for the Contractors were in excess of their regular working hours for DFW. *See* Def.'s Br. 5-6; Def.'s

Reply 2. DFW argues that Plaintiffs' claim that they were not required to work eight hours in a day or 40 hours in a week before they could work "off duty" contradicts the allegations in the First Amended Complaint and Frazier's prior sworn declaration. *See* Def.'s Reply 3. "Under the circumstances, these contradictions suggest that Frazier and Brannon created the declarations solely for the purpose of creating a factual issue to survive summary judgment[.]" *Id.*

The Court finds that DFW has not met its burden on summary judgment. DFW does not offer any evidence in support of its position and instead relies solely on Plaintiffs' allegations in the First Amended Complaint and Frazier's prior declaration. In his prior declaration, Frazier testified that he would "normally work a 40-hour week for [the] Airport," referred to as "on duty" work, and "an additional 10 to 30 hours a week" for one or more of the Contractors, referred to as "off duty" work. *See* Pls.' App. 03-04, Decl. of Frazier ¶¶ 5-6 [ECF No. 53-1]. In his declaration submitted in response to DFW's motion for summary judgment, Frazier testifies, "There is not a standard, normal or regular work week for Civilian Security Officers. Our work schedules are subject to a bidding process based on seniority." *See* Pls.' App. 06, Decl. of Frazier ¶ 19 [ECF No. 129-1]. Both Frazier and Brannon testify in their sworn declarations that they were "not required to work eight (or any) hours in a day or 40 (or any) hours in a week before they could work 'off duty' for $30 per hour." *See id.* at 06, Decl. of Frazier ¶ 18; *see also id.* at 18, Decl. of Brannon ¶ 12. The Court does not find Frazier's statement that he "normally" worked a 40-hour week for DFW to be contradictory to the statements in his and Brannon's later declarations.

Moreover, the "Interim Procedure—PS.220.01 Off-Duty Employment" submitted by Plaintiffs makes no mention of Civilian Security Officers qualifying for "off-duty work" only after working 40 hours for DFW. *See id.* at 11-13. The procedure for requesting civilian off-duty employment requires employees to "submit a Request for Off-Duty Employment form through

channels to the Security Services Division Off-Duty Employment Coordinator." *Id.* at 11. "Supervisors recommend approval or denial and forward the request to the Security Services Division Commander." *Id.*

DFW does not offer any summary judgment evidence that the higher pay for the "off duty" hours was because such hours were in excess of eight in a day or 40 in a workweek. There is no evidence in the record of an agreement between DFW and the Civilian Security Officers that stated that "off duty" work would be paid at a premium rate contingent upon or because the "off duty" work was work that was more than eight hours in a day or 40 hours in a workweek. DFW also does not submit any sworn declarations from employees or supervisors of DFW that challenges the allegations and declarations of Frazier and Brannon.

DFW did not meet its burden on summary judgment in establishing that it met the requirements of Section 207(e)(5). *See Caraballo v. City of Chicago*, 969 F. Supp. 2d 1008, 1015 (N.D. Ill. 2013) ("[T]he employer bears the burden of showing that a [Section 207(e)] exception applies."); *see also Fontenot*, 780 F.2d at 1194 (holding that party with burden of proof on an issue "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor."). DFW's conclusory allegations and unsubstantiated assertions that the $30.00 per hour payments were premium payments do not suffice. *See Douglass*, 79 F.3d at 1429. The Court requires more.

At this stage, the Court cannot hold as a matter of law that the $30.00 per hour payments were premium payments and that DFW is entitled to an offset of this premium pay toward any alleged overtime owed to Brannon. Therefore, the Court denies DFW's Motion for Summary Judgment.

**SO ORDERED.**

SIGNED May 2, 2019.

　　　　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　**KAREN GREN SCHOLER**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**